## Moldawer's Appeal.

164

Argued October 2, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Edward Stone,* of *Aarons, Weinstein, Stone & Goldhaber,* for appellant.

*John Edward Sheridan,* Special Deputy Attorney General, for appellee.

OPINION BY PARKER, J., February 28, 1936:

After the United Strength Bank and Trust Company came into possession of the Secretary of Banking of

this Commonwealth, William M. Moldawer presented a reclamation petition in which he claimed to be the owner and entitled to possession of one hundred shares United States Electric Power Corporation. Depositions having been taken in support of a rule to show cause, the rule was discharged and the petition dismissed. Moldawer has appealed to this court.

The parties entered into a stipulation as to certain of the facts involved, leaving to the court below the determination of the remaining facts. We will first state the facts as to which there is not any present dispute, having either been agreed upon or found by that court. During 1929 and prior to the time when this controversy arose, William M. Moldawer and Henry W. Perlstein, brothers-in-law, were both depositors in the United Strength Bank and Trust Company (hereinafter referred to as the bank), and Oliver S. White was president of that institution. White, who appears to have been interested in promoting sales of the stock of the United States Electric Power Corporation (hereinafter referred to as Electric Power Company), suggested to Perlstein when in the bank that it was advisable to purchase stock in the Electric Power Company. Perlstein explained to White that he had not the means to buy the stock but that his brother-in-law, Moldawer, might be interested. At that time Perlstein was indebted to Moldawer in the sum of $10,000. It was agreed between Moldawer and Perlstein that Perlstein could pay a part of his indebtedness to the claimant by buying and paying for one hundred shares of the Electric Power Company stock, whereupon Perlstein saw White, discussed the matter with him, and had White communicate with Brooke, Stokes and Company, brokers, instructing them to buy one hundred shares of stock of the Electric Power Company for William M. Moldawer. White placed the order with the brokers for such stock for account of

William M. Moldawer. The order was executed on September 13, 1929, but as the stock was not ready it was not delivered to the brokers until the early part of October. On October 7, 1929, the brokers delivered the certificate of stock to the bank and took the bank's receipt therefor, the certificate of stock being issued in the name of Benton and Company, a "street name," properly endorsed in blank and guaranteed. The brokers in the meantime advised Moldawer of the purchase, rendering him a bill for the purchase price, $3,250. When Moldawer received this bill he advised the brokers that Perlstein would pay for the stock. On October 8, 1929, Perlstein borrowed from the bank the sum of $3,000, giving his demand collateral note as security therefor. This sum was deposited in the bank and Perlstein left his check with the bank for $3,250, which was paid to the brokers.

When the note came into the hands of the Secretary of Banking in charge of the bank, the collateral named in the note was two hundred shares National American Company and one hundred shares United States Electric Power Corporation. The Electric Power Company stock was written in the space for the listing of collateral on the first line in a crowded handwriting and apparently not in the same handwriting as the balance of the note. On the day the $3,000 note was given, the market value of the two hundred shares of National American Company ranged between $3,550 and $3,625. The banking department found the one hundred shares of Electric Power Company stock in a "street name" among the collateral of the bank and noted on the collateral register. The department, having made demand on Perlstein on March 26, 1930, for the payment of the note, later directed the stock to be sold and it was so sold, but not until a sufficient time had elapsed after receipt of the notice of the reclamation petition to have afforded an opportunity to the banking department to

cancel the order. It was agreed that if the claimant is entitled to recover he is entitled to receive the sum of $2,075.

Perlstein testified that the Electric Power Company stock was not pledged or agreed to be pledged to the bank as collateral for the $3,000 note; that when the note was signed that stock was not included as collateral; and that the words, "100 shares United States Electric Power Corp.," were added after the note left the hands of Perlstein and are in another handwriting than that of the balance of the note. Perlstein also testified as follows: "Q. I understood you to say that Mr. Moldawer told you to order of Mr. White, the President of the U. S. Bank and Trust Company at that time, 100 shares of U. S. Electric Power Corporation. A. He told me to instruct Mr. White to buy them for him. Q. To buy them for him? A. That's right." White was not available as a witness at the time of taking depositions and there was no contradiction of Perlstein's testimony. It remained for the court to determine as facts whether Perlstein actually pledged the stock to the bank as alleged and what, if any, interest the claimant or Perlstein had in the stock.

With reference to the pledging of the stock the court below said: "Looking at the testimony alone, however, we would be inclined to the view that, since Perlstein's direct and positive testimony is uncontradicted, the stock was not put up or intended to be put up by him as collateral for his loan. Nevertheless, we think this question of fact is of little, if any, importance in the case, for the real question is not whether the stock was hypothecated by Perlstein with the bank, but whether it belonged to Moldawer. If it was bought and received by the bank as agent for Moldawer, neither it nor Perlstein could have used it lawfully as security for the latter's loan. On the other hand, if the bank received the stock as agent for Perlstein, then Moldawer

has no lawful claim to it, regardless of whether or not it was pledged by Perlstein for his loan."

We agree with the conclusion of the court below that the actual question involved depends upon the agreement between Moldawer and Perlstein. The court, in effect, found that Perlstein did not pledge the stock as collateral for the $3,000 note but, as the bank was put upon notice as to any rights of Moldawer when the agent of the bank, the president, acting for it in that very matter, directed the broker to buy the stock for Moldawer, the bank could not claim the stock as against the rights of Moldawer even though the certificate was in a "street name" (Uniform Stock Transfer Act of 1911; 15 PS 301-324). The facts with reference to what the exact nature of the arrangement was between Perlstein and Moldawer have not been as definitely found as would be desirable. It was stipulated that it was agreed between these parties that Perlstein could pay part of his indebtedness to Moldawer by buying and paying for one hundred shares of the Electric Power Company, but Perlstein testified, uncontradicted, that Moldawer instructed him "to order of Mr. White" the hundred shares of stock. It is conclusively established that Perlstein did, in fact, place the order through White in Moldawer's name and paid for the stock and that the stock was delivered to the bank where it remained until sold by the Secretary of Banking. We do not understand the opinion of the court to intend to find as a fact that Moldawer did not instruct Perlstein to buy the stock for him but rather to draw that inference as a legal conclusion from the fact that the mere agreement to credit the value of one hundred shares of the Electric Power Company stock on his indebtedness when the stock was purchased did not constitute White Moldawer's agent to buy the stock.

We will therefore, in order to avoid delay, consider the situation from two angles. We will first assume

that the contract that was made was to the effect that Perlstein "could pay part of his indebtedness to Moldawer by buying and paying for the hundred shares of stock for Moldawer," and that Moldawer instructed Perlstein to place an order with White for the stock; that the instruction was executed and the stock was paid for by Perlstein and was held by the bank. It seems clear to us that on that assumption the stock is the property of Moldawer and that he is entitled to the possession of it or the value thereof. This proposition was considered in the opinion below and dismissed on the ground that *delegata potestas non potest delegari.* Mechem on Agency (2d ed. 1914) §333, was also cited to the effect: "If the agent, having undertaken to transact the business of his principal, employs a sub-agent on his own account to assist him in what he is undertaking to do, even though he does so with the consent of the principal, he does so at his own risk, and there is no privity between such sub-agent and the principal. The sub-agent is, therefore, the agent of the agent only." These authorities are not pertinent as we view the matter. It is not the law that an agent may never delegate his authority. The rule as generally stated is to the effect that an agent cannot delegate powers calling for the exercise of discretion, skill or judgment (2 C. J. 685). Expressed in the affirmative, "an agent is authorized to appoint another agent for the principal if: (a) the agent is appointed to a position which, in view of business customs, ordinarily includes authority to appoint other agents; (b) the proper conduct of the principal's business in the contemplated manner reasonably requires the employment of other agents; (c) the agent is employed to act at a place where or in business in which it is customary to employ other agents for the performance of such acts": Restatement of the Law of Agency, §79. It will be further noted that the

quotation from Mechem on Agency is not applicable here. In the first place, we are assuming that Moldawer specifically ordered Perlstein to buy the stock from White and, in the second place, the power was actually executed in accord with the instructions. It also appears from the evidence that the act of Perlstein was ratified by Moldawer. In addition, there were no limitations placed upon Perlstein in the execution of the power either by himself or White with reference to where White should procure the stock.

If we should assume that Perlstein testified falsely when he said that Moldawer instructed him to have White buy the stock for Moldawer, we still arrive at the same result. It is conceded that the stock was, in fact, purchased in the name of Moldawer and it may well be so admitted because of the agreed facts to the effect that the order was actually placed for Moldawer by White, that all of the records in the brokers' office show that it was so purchased, that the brokers rendered a bill to Moldawer for the stock and the bank executed a receipt having the notation, "Wm. M. Moldawer, for $3,250." The order having been placed by the president of the bank for a purchase of stock for Moldawer and the stock then having been delivered to the bank, the only reasonable inference that can be drawn is that it was delivered to the bank for Moldawer. But that is not all, for the only other person interested was Perlstein who disavows any claim to the stock and states that it belongs to Moldawer. Assuming that the testimony of Perlstein to the effect that Moldawer instructed him to have White buy the stock was not true, we have this situation: Perlstein has accepted the offer of Moldawer by having the stock purchased for Moldawer and leaving it with the bank. It seems clear to us that the agreement between Perlstein and the claimant was predicated on a purchase of stock at a fixed price forthwith, and that when the stock was so

purchased Moldawer was required to give credit on the basis of the value at the time of the purchase and that Perlstein was called upon to deliver the stock even if the price might subsequently advance. Both Perlstein and Moldawer agreed that the stock was delivered to the bank for Moldawer.

The common pleas court having found that the stock was sold after receipt of the notice of the reclamation proceeding by the Secretary of Banking, it will be necessary to make an appropriate order for the payment of the proper value of the stock to the claimant.

The order of the court below is reversed, and the record is remitted to that court for further proceedings not inconsistent with this opinion.